1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                       **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| ROBERT WEHR, | Case No. ED CV 11-1907 JCG |
|         Plaintiff, | |
|   v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,[1/] | |
|         Defendant. | |

      Robert Wehr ("Plaintiff") challenges the Social Security Commissioner's decision denying his application for disability benefits. Specifically, Plaintiff contends, among other things, that the Administrative Law Judge ("ALJ") did not properly consider his treating physician's opinions. (Joint Stip. at 5-8, 12.) The Court agrees with Plaintiff for the reasons stated below.

      A.    <u>An ALJ Must Provide Specific and Legitimate Reasons to Reject the Opinions of a Treating Physician</u>

      "As a general rule, more weight should be given to the opinion of a treating

---

    [1/]   Carolyn W. Colvin is substituted as the proper defendant herein. *See* Fed. R. Civ. P. 25(d).

source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *accord Benton ex. rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even if the opinions of a treating source are contradicted by another doctor, the ALJ may not reject those opinions without providing specific and legitimate reasons supported by substantial evidence for doing so. *Id.*

> B.   The ALJ Failed to Provide Specific and Legitimate Reasons for
>       Rejecting the Opinions of Dr. Parsons

On November 5, 2009, John Parsons, M.D., authored a note indicating that Plaintiff was temporarily disabled for six months while he underwent a psychiatric evaluation. (AR at 409.) On December 9, 2009, after Plaintiff had undergone that psychiatric evaluation, Dr. Parsons gave the following opinion:

> My impression is that [Plaintiff] might possibly be able to work under
> very specialized and supervised circumstances with the understanding
> he has mental retardation -- however such job opportunities do not seem
> to exist. . . .  Physically he appears to be able to work, but he has a long
> history of profound mental handicap. . . .  I am also going to request an
> evaluation by the Regional Center which deals with developmental
> disabilities to see if he qualifies fo[r] any extra assistance."

(*Id.* at 403.)[2]

---

[2]   It appears that the ALJ did not attempt to locate any records from the Regional Center. It is thus unclear whether Plaintiff underwent such an evaluation.

1    Significantly, Plaintiff's November 16, 2009, psychiatric evaluation,
2  conducted by Rizwana Shaheen, M.D., within the same medical group as Dr.
3  Parsons, resulted in findings that Plaintiff's cognition was slow; his behavior was
4  anxious and demanding; his speech was continuous, pressured, and loud; his mood
5  was agitated, angry, and irritable; and his attention and concentration were
6  distractible.  (*Id.* at 401.)  At a December 17, 2009, follow-up psychiatric evaluation,
7  Dr. Shaheen reported that Plaintiff's behavior was anxious; his speech was agitated;
8  his mood was anergic; and his attention and concentration were distractible.  (*Id.* at
9  405.)

10    The ALJ rejected the opinions of Dr. Parsons regarding Plaintiff's ability to
11  work because they "are not supported by any psychological testing, supportable
12  explanation or analysis based on objective findings."  (*Id.* at 239.)  The ALJ also
13  noted that although Dr. Parsons indicates that Plaintiff "has been labeled as mentally
14  retarded," this is contrary to the IQ scores reported by consultative examiner Rosa
15  Colonna, Ph.D. on July 14, 2007.  (*Id.*)  Finally, the ALJ explained that "Dr.
16  Parsons' opinion that there are no job opportunities for a person with a history of
17  mental retardation is conclusory, does not specify what limitations, if any, the
18  claimant has despite his impairment, and regards an issue that is reserved to the
19  Commissioner."  (*Id.* at 239-40.)

20    The ultimate determination of disability is reserved to the Commissioner.  20
21  C.F.R. § 404.1527(e).  However, the Ninth Circuit has explained that, while a
22  treating physician's opinion as to the ultimate issue of disability is not conclusive,
23  courts should not distinguish between a medical opinion as to a physical condition
24  and a medical opinion on the ultimate issue of disability when determining whether
25  the ALJ provided sufficient reasoning for rejecting the opinions of a treating source.
26  *Rodriguez v. Bowen*, 876 F.2d 759, 762 n.7 (9th Cir. 1989).  Moreover, according to
27  the Social Security Administration:

28    [O]pinions from any medical source on issues reserved to the

1        Commissioner must never be ignored.  The adjudicator is required to

2        evaluate all evidence in the case record that may have a bearing on the

3        determination or decision of disability, including opinions from medical

4        sources about issues reserved to the Commissioner.

5 Social Security Ruling ("SSR") 96-5p.[3/]  Accordingly, the ALJ was not justified in

6 ignoring Dr. Parsons' conclusions regarding Plaintiff's ability to work simply

7 because the disability determination was reserved to the ALJ.

8       In addition, the ALJ failed to give specific and legitimate reasons for rejecting

9 Dr. Parsons's opinions that Plaintiff suffered from mental retardation and that

10 Plaintiff would need very specialized and supervised employment where it was

11 understood that he suffered from mental limitations.

12       Preliminarily, the ALJ's proffered reason that Dr. Parsons's opinions were not

13 supported by any psychological testing, explanation, or analysis based on objective

14 findings is not a legitimate reason for rejecting Dr. Parsons's opinions.  First, Dr.

15 Parsons's opinions were based upon his personal interaction with, and observation

16 of, Plaintiff, observations which led Dr. Parsons to believe that Plaintiff suffered

17 from a "profound mental handicap" and that he should be referred to the Regional

18 Center for assistance.  (AR at 403.)  Moreover, Dr. Parsons's opinions were based

19 on the psychiatric evaluation conducted by Dr. Shaheen, which resulted in objective

20 findings that Plaintiff's cognition was slow; his behavior was anxious and

21 demanding; his speech was continuous, pressured, and loud; his mood was agitated,

22 angry, and irritable; and his attention and concentration were distractible.  (*Id.* at

23

24 ————————————

25   [3/]   Social Security Rulings are issued by the Commissioner to clarify the

26 Commissioner's regulations and policies.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3
(9th Cir. 1991).  Although they do not have the force of law, they are nevertheless

27 given deference "unless they are plainly erroneous or inconsistent with the Act or

28 regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

401.)[4/]

Second, the contrary IQ scores reported by Dr. Colonna did not amount to a legitimate reason for rejecting Dr. Parsons's opinions. Although apparently not included in the record before the Court, the ALJ reported that on August 15, 2001, a Dr. Japka reported IQ scores as follows: 76 verbal, 64 performance, and 68 full scale. (*Id.* at 237-38.) On July 14, 2007, apparently the next time Plaintiff underwent any type of mental health evaluation, Dr. Colonna reported the following IQ scores: 80 verbal, 83 performance, and 79 full scale. (*Id.* at 143.) As explained above, in 2009, Drs. Parsons and Shaheen reported significant mental health symptoms. Finally, on January 26, 2010, Plaintiff underwent a subsequent consultative psychological evaluation by Mark D. Pierce, Ph.D. (*Id.* at 412A-412F.) Dr. Pierce reported the following IQ scores: 65 verbal, 63 performance, and 61 full scale. (*Id.* at 412D.)[5/]

---

[4/]   To the extent that the ALJ also attempted to reject the findings of Dr. Shaheen, his decision was in error. The ALJ states that Dr. Shaheen's opinions were not based on psychiatric testing, (AR at 236), but, as explained above, her findings were based on objective observations. The ALJ further rejects Dr. Shaheen's findings because she did not review all of Plaintiff's medical records. (*Id.*) However, it is not apparent how the ALJ could have known what records Dr. Shaheen reviewed during her evaluation of Plaintiff. Next, the ALJ attempted to reject Dr. Shaheen's findings based on subjective reports of capability reported by Plaintiff to Dr. Shaheen. It is imprudent to reject the findings of a mental health professional in light of the subjective opinions of an individual with a documented mental handicap. Finally, to the extent that the ALJ rejected Dr. Shaheen's findings on the basis of Dr. Colonna's IQ testing, this reason must be rejected for the reasons discussed below with respect to Dr. Parsons.

[5/]   The IQ scores reported by Drs. Japka and Pierce support a finding that Plaintiff meets Listing 12.05D, while the IQ scores reported by Dr. Colonna do not. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Significantly, it was under this Listing that Plaintiff had been found to be disabled between 1998 and 2007, when the instant ALJ decision found Plaintiff no longer disabled based exclusively on the IQ

1    Although Dr. Colonna's IQ scores are contrary to the entirety of the medical

2    record, the ALJ credited them as valid and relied on them to reject the opinions of

3    Drs. Parsons, Shaheen, and Pierce.  The ALJ found that Dr. Colonna's IQ scores

4    show that Plaintiff had dramatically improved from his documented mental

5    retardation.  (*Id.* at 238, 239.)  Yet, when faced with the later scores from Dr. Pierce,

6    which are consistent with Dr. Japka's findings and again document Plaintiff's mental

7    handicap, the ALJ rejected them because they are considerably lower than Dr.

8    Colonna's unsubstantiated scores.  The ALJ further noted that there is no evidence

9    that Plaintiff's condition had deteriorated between Dr. Colonna's evaluation and Dr.

10   Pierce's evaluation.  (*Id.* at 236.)  In fact, it is clear from the evidence as a whole that

11   Plaintiff's condition did not deteriorate but, rather, never improved, as Dr. Colonna's

12   IQ scores are not consistent with any other evidence in the record.

13       Ultimately, Dr. Parsons's opinions are supported by the findings of Drs.

14   Shaheen, Pierce, and, apparently, Japka, and are contrary only to the IQ scores of Dr.

15   Colonna.  In light of this discrepancy in the evidence, the Court cannot find that Dr.

16   Colonna's scores amounted to a legitimate reason for rejecting Dr. Parsons's

17   opinions.  Rather, it appears that the ALJ inaccurately viewed Plaintiff's entire

18   mental health history through the prism of Dr. Colonna's anomalous IQ.

19       C.    An Award of Benefits Is Warranted

20       With error established, this Court has discretion to remand or reverse and

21   award benefits.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no

22   useful purpose would be served by further proceedings, or where the record has been

23   fully developed, it is appropriate to exercise this discretion to direct an immediate

24   award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004).

25   But where there are outstanding issues that must be resolved before a determination

26   can be made, or it is not clear from the record that the ALJ would be required to find

27   _____

28   scores reported by Dr. Colonna.  (AR at 230, 235.)

1  plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.

2  *See id.* at 594.

3       "More specifically, the district court should credit evidence that was rejected

4  during the administrative process and remand for an immediate award of benefits if

5  (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2)

6  there are no outstanding issues that must be resolved before a determination of

7  disability can be made; and (3) it is clear from the record that the ALJ would be

8  required to find the claimant disabled were such evidence credited."  *Id.* at 593

9  (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

10       Here, a vocational expert testified at the hearing before the ALJ that if

11  Plaintiff suffered from mental impairments so that he was "markedly limited in []

12  mental functions," he could not perform work activity.  (AR at 456.)  After crediting

13  as true the opinions of Dr. Parsons and the medical evidence as a whole, and

14  considering that evidence in light of the testimony of the vocational expert, it is clear

15  that the ALJ would be required to find Plaintiff disabled, whether because Plaintiff

16  meets Listing 12.05D or because he requires such drastic workplace

17  accommodations as to render him unemployable.

18  ///

19  ///

20  ///

21  ///

22  ///

23       Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

24  **REVERSING** the decision of the Commissioner and **REMANDING** the matter for

25  the immediate calculation and payment of benefits.[6/]

26

27       [6/]   In light of the Court's award of benefits, it is unnecessary to address

28  Plaintiff's remaining contentions.  (*See* Joint Stip. at 5-15, 20-22.)  The Court notes,

1

2   Dated: August 20, 2013

3   _____

4                              Hon. Jay C. Gandhi

5                        United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   however, that for the same reasons discussed above, the ALJ's rejection of Dr.

27   Pierce's opinions is suspect.  Had the ALJ credited Dr. Pierce's IQ scores, which
     were consistent with the medical record as a whole, it is even more apparent that the

28   ALJ would have been required to find Plaintiff disabled under Listing 12.05D.